## Twining's Appeal.

1. The Act of April 11th 1848 (Pamph. L. 536), conferred upon married women no rights with reference to the disposition of property settled to their sole and separate use to which they were not before entitled.

2. Where a married woman and her husband conveyed by indenture containing no power of revocation certain property to a trustee, upon trust to pay the income thereof to the married woman for life, for her sole and separate use, and after her death, upon trust to grant and convey the property to a son of said married woman by a former husband, a court of equity will not, on the joint application of the married woman, her husband and the ultimate beneficiary, decree cancellation of the deed of trust, and order the subjects of said trust, or any part thereof, to be transferred to the ultimate beneficiary. The married woman, being under disability, will be protected from the undue influence which may have been brought to bear by her husband to destroy the trust created for her use.

3. Whether upon the death of her husband, the married woman joining with the ultimate beneficiary could obtain such a decree, not decided.

January 4th and 5th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the decree of the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term 1881, No. 28. In Equity.

This was a bill in equity filed by Edward H. B. Twining against the Girard Life Insurance, Annuity and Trust Company of Philadelphia, Gordon Monges and Louisa A. Monges. The plaintiff was the son of Mrs. Louisa A. Monges by a former husband. The bill set forth that by a certain indenture dated September 18th 1879, the defendants Gordon Monges and Louis A. Monges, his wife, granted, assigned and conveyed unto the Girard Life Insurance, Annuity and Trust Company of Philadelphia, certain securities and personal property therein particularly described, of the value of about $18,000, *in trust*, to pay over the net income thereof to the said Louisa A. Monges for her sole and separate use during her life, and upon her death to grant, assign and convey the principal of the said trust estate to her son, said Edward H. B. Twining, absolutely. That the property, so conveyed, represents a portion of the estate of Edward H. Twining, deceased, the father of the plaintiff, Edward H. B. Twining, and the former husband of the defendant, Louisa A. Monges. The said deed of trust contained no power of revocation.

That the plaintiff being about to engage in business which required a certain amount of capital, requested his mother, the said Louisa A. Monges, to consent to a revocation of the said trust so far as to permit the payment to him by the trustee of the sum of $4000, part of the principal of said trust estate, to which request the said Louisa A. Monges and Gordon Monges consented.

A demand in writing was thereupon served upon the trustee under the hands and seals of said Gordon Monges, Louisa A. Monges and Edward H. B. Twining, being all the parties who now have, or ever can have, an interest in the principal or income of said estate, requesting the payment to him of the sum of $4000, and releasing the said trustee from all claims for interest and for said amount of principal. That the trustee refused to comply with said request, being advised that it was not authorized so to do under the terms of the deed of trust. The bill prayed that the corporation trustee be decreed to pay to the plaintiff the sum of $4000, a part of the said trust estate, and general relief.

The answer of Gordon and Louisa A. Monges admitted the facts averred in the bill, and joined in the prayer thereof. The answer of the Girard Life Insurance, Annuity and Trust Company submitted themselves to the order of the court in the premises.

The material clauses of the said deed of trust were as follows :

" Now this indenture witnesseth, that the said parties of the first part, the said Gorgon Monges and Louisa Armantine, his wife, as well for and in consideration of the premises as, &c., * * by these presents do give, grant, bargain, sell, assign, transfer and set over unto the said party of the second part, their successors and assigns for ever (here follows a description of the subjects of the trust), being the entire principal or capital of the estate of Edward H. Twining, as aforesaid, placed by Edward H. B. Twining in the hands of the said Gordon Monges and his wife, Louisa Armantine, or either of them * * *in trust,* in the first place, to hold all and singular the estate, property and premises hereby conveyed and assigned, during the whole of the natural life of the said Louisa Armantine Monges, whether covert or sole, for her sole and separate use in the manner herein set forth, and to hold, invest and keep invested the same and every part thereof, in the name of the said party of the second part, either as the same may be invested at the signing of this indenture or in such other securities, in bond and mortgage or otherwise, as the said party of the second part, by and with the advice and consent of the said party of the first part shall think safe and reliable, and the net income, interest and dividends thereof, from time to time as they shall accrue, to collect, receive and pay over to the said Louisa Armantine Monges for and during her natural life, upon her own proper receipt, and into her own hands, to and for her own sole and separate use and behoof, whether covert or sole, but in such way and manner that the same shall not be answerable for nor in any manner liable to the control or to the debts, contracts or engagements of any husband she, the said Louisa Armantine Monges may now or hereafter have, nor be liable to any charge,

encumbrance or assignment in anticipation of her, the said Louisa Armantine Monges, whether covert or sole, or be applied to any other object than the sole and separate use of the said Louisa Armantine Monges, * * and upon this *further trust*, in the second place, that upon, from and immediately after the death of the said Louisa Armantine Monges, they, the party of the second part, will hold the said trust estate to, and for the use of, and will then give, transfer, assign, pay and set over the entire principal of the same, to Edward H. B. Twining, her son, as aforesaid, his heirs, executors, administrators and assigns for ever, free and discharged of any restriction, limitation or restaint whatever."

After hearing, upon bill and answers, the court dismissed the bill, ALLISON, P. J., delivering the following opinion:

"This application is chiefly supported by the cases of Culbertson's Appeal, 26 P. F. Smith 145, and Russell's Appeal, 25 Id. 269. The doctrine is clearly recognised in these cases, that where a trust is still subsisting, although all its purposes may not have been accomplished, if all who are or may be interested are in existence, are *sui juris*, and consent, courts of equity may decree a determination of the trust, on the principle that a trust continues in equity no longer than the thing to be secured by it demands.

"The distinction between each of these cases and the present application is, that the parties beneficially interested, and intended to be protected by the trust, were *sui juris*. In such case the court holds that, unless a deliberate intent of a party to tie up his hands should clearly appear, the omission of a power of revocation, accompanied by proof of a failure of counsel to advise it, are circumstances, *with others*, to show that it was not done with deliberate intent. But in Russell's Appeal, *supra*, it is just as clearly held, that a trust which contains no power of revocation, if not in prejudice of creditors, and created with intention and knowledge of the act, is irrevocable in law and in equity; nor is the mere omission of counsel to advise the insertion in the deed of a power of revocation of itself ground to set aside a voluntary conveyance. It was upon the recognition of this principle that Koenig's Appeal, 7 P. F. Smith 352, was decided. The trust was for the separate use of a married woman, and the court held that it ceased on the death of the husband. In Russell's Appeal, the master puts the decision on the ground that it was apparent that the intention was that the trust should be operative only during the life of the intended husband. This view of the case was adopted by the court on final hearing of the cause. Chief Justice AGNEW says, that where the facts show that the instrument was executed without advice or reflection, and without an intention to bind the party after the reasons and motives for executing it have passed away, and the party is again *sui juris*, a court of equity will and ought

[Twining's Appeal.]

to relieve against volunteers, claiming without consideration, or a reasonable motive for continuing the donor's disability.

"Mrs. Monges, formerly Mrs. Twining, is still under the disability of coverture. She is therefore to be protected even against her own solicitation to set aside this trust in part or in whole, and it matters not that her husband consents to the application. The reason for the creation of the trust is at this time in as full force as it was at its inception, and the principle which is recognised by courts of equity, as justifying the setting aside of a trust, does not exist in her case. To this we add, that it is apparent that the intention was to carry the trust beyond the death of her present husband, should he die before his wife. By its terms it is to continue for the remainder of her life, whether she marry again or remains sole, and only in the event of her death can the principal fund be paid over to the plaintiff.

"Bill dismissed, with costs."

The plaintiff took this appeal, assigning for error, the dismissal of the bill.

*F. Carroll Brewster* (with him *Francis E. Brewster* and *F. Carroll Brewster, Jr.*), for the appellant.—This is the case of a voluntary settlement of property in trust for the separate use of A. for life, remainder to B. absolutely. The life-estate and the remainder constituting the entire corpus, it is difficult to see why a conveyance signed by the only parties in interest would not pass the title. The trust for the sole and separate use of Mrs. Monges was to protect the property from her husband or his creditors. No part of the fund now sought to be withdrawn from the trust estate would go to him or his creditors. Nor would it be an anticipation of the payment of interest to Mrs. Monges. It is an extinguishment by her of that much of the corpus, and only anticipates its vesting in the remainderman.

It is now settled that, "although a trust may not have ceased by expiration of time, and although all its purposes may not have been accomplished, yet if all the parties who are or who may be interested in the trust property are in existence, and are *sui juris*, and if they all consent and agree thereto, courts of equity may decree the determination of the trust and the distribution of the trust fund among those entitled thereto: Culbertson's Appeal, 26 P. F. Smith 145; Perry on Trusts, §§ 274, 386, 920. Whatever may be the nominal duration of a trust, it continues in equity no longer than the thing sought to be secured by the trust demands. Equity will not enforce a purely voluntary deed of trust against the grantor or his representatives: Smith *v.* Harrington, 4 Allen 566; Bowditch *v.* Andrew, 8 Id. 339. The mere omission of a power of revocation will not prevent the operation of this principle. Such omission is primâ facie evidence of

mistake: Russell's Appeal, 25 P. F. Smith 269; Wallaston *v.* Tribe, Law Rep., 9 Equity 44; Coutts *v.* Acworth, Law Rep., 8 Equity 558; Forshaw *v.* Welsby, 30 Beav. 243; Cooke *v.* Lamotte, 15 Id. 234. The deed gives Mrs. Monges the right to change the securities, with the assent of the trustee, and if she is willing to take her son's bond for $4000, the trustee, being secured against loss by the signatures of all the parties in interest, cannot object.

*John J. Ridgway, Jr.,* for the Girard Company, trustee.—The deed contains no power of revocation, and no mistake or fraud is alleged. The trust is a lawful one for the sole and separate use of a married woman. To grant the prayer of the bill would be, in effect, a revocation pro tanto, which, if lawful, might be repeated so as to exhaust the whole trust estate. The deed plainly forbids what is now attempted to be done, and it cannot be legalized by the assent of the cestui que trust, who has no power except that given or reserved to her in the deed. Not being *sui juris,* she would not be bound by such consent, and it would be no answer to her demand hereafter for income for the trustee to say that it had disappeared with the principal at her request. The object of the trust was to prevent her anticipating or assigning the income, with or without the persuasion of her husband, and to ask a court of equity to overturn this prudent provision while the object of the trust still exists, would be to ask it to sanction a breach of trust: Hill on Trustees, *421, 422; Lancaster *v.* Dolan, 1 Rawle 231.

In Culbertson's Appeal, 26 P. F. Smith 145, relied on by the appellant, the trust was not under any instrument, but was a widow's dower interest in partition in the Orphans' Court. The court had jurisdiction of the fund, having themselves impressed it with a quasi trust. The case is, therefore, inapplicable. Moreover, the general statement quoted in the opinion by MERCUR, J., from Perry on Trusts, § 386, was modified and restricted by Mr. Perry in the later editions of his work, by the supplementary section, 386 *a,* where he says, referring to a trust lawfully created for a specific purpose: "Any conveyance, whether by operation of law, or by the act of any of the parties, which disappoints the purposes of the settlor by divesting the property or the income from the purposes named, would be a breach of trust. Therefore, it may be said that the power to create a trust for a specified purpose does, in some sort, impair the power to alienate property." This accords with the current of all the later Pennsylvania decisions on the subject of trusts.

Mr. Justice TRUNKEY delivered the opinion of the court, January 24th 1881

[Twining's Appeal.]

A feme covert is deemed, in respect to her separate estate, a feme sole only to the extent of the power clearly given by the instrument by which the estate is settled, and has no right of disposition beyond it: Wallace v. Coston, 9 Watts 137. This principle is not set aside by the Act of 1848, relative to married women; for the separate estate thereby created is a legal one, totally distinct from an equitable separate estate created by agreement or devise: Penna. Co. for Ins. on Lives v. Foster, 11 Casey 134. Prior to that act, a married woman could dispose of her personal estate to her husband, by gift or otherwise, and, with his consent, to a stranger; the act took from her no right which she had previously possessed in regard to the disposal of her personal estate: Brown's Appeal, 9 W. N. C. 329. But the act had no reference to estates settled to the separate use of married women. These were secure before, and it was not intended to take away from the wife any of that protection of her separate property against her husband which she had previously enjoyed. "All experience proves that the highest protection of the wife against the husband is in her disability, in her want of power to yield to his solicitations, or give way to her sympathies:" Wright v. Brown, 8 Wright 224.

To grant the prayer of the plaintiff, would, necessarily, be upon a principle that the whole fund could be disposed of by agreement of the parties. That principle would enable the husband to influence the wife to destroy the trust created for her use. There is no difference in legal effect between this trust and one created by will or deed of a parent for use of a married daughter. If the beneficiary of the trust can defeat it by agreement while the reasons for its creation exist, it is worthless. The validity of trusts like this, against everybody, is too well settled to be overthrown, save by legislative power.

Although there is absence of power of revocation in the deed, the circumstances, as shown, do not warrant the cancellation of the deed. At present Mrs. Monges is incapable of acting so as to defeat the primary object of the trust.

With the single remark, that the point is not raised, whether upon the death of her present husband, she thereafter remaining sole and consenting, a decree could be made that the principal fund be paid over to the plaintiff, the decree is affirmed on the opinion of the learned president of the Common Pleas.

Decree affirmed, and appeal dismissed at the costs of the appellant.