## MATILDA G. MacCONNELL v. REESE LINDSAY.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 8, 1889—Decided February 24, 1890.
[To be reported.]

1. The provisions of the Married Person's Property Act of June 3, 1887, P. L. 332, like those of the act of April 11, 1848, P. L. 536, apply to the separate estate at law of a married woman, as distinguished from the separate estate which has existed in equity only; and an estate of the latter kind may still be created subject to the same rules of equity as heretofore.

2. Nor do the provisions of either the act of 1848, or of that of 1887, or of both taken together, have any effect upon the construction of an instrument such as would have been held, prior to the passage of those acts, to create an equitable separate estate; language which would have had that effect then, will have no different effect in an instrument executed since June 3, 1887.

Statement of Facts.

3. A devise to a married woman " absolutely and in fee-simple, . . . . free from the control of her present or future husband, and without any liability for any debts, liabilities or engagements of such husband, but wholly for her own use and benefit, and subject to her own control," establishes a valid separate use trust for the beneficiary, and that no trustee is appointed and no active duties imposed is immaterial.

4. The rule is now well settled in Pennsylvania that neither the feme covert, nor her husband, nor both together, have any powers over her separate estate in equity except what are expressed in the trust instrument, and even these must be construed strictly; wherefore, the deed of herself and her husband conveys no title to her separate use property, though the instrument of donation specify that it shall be subject to her own control.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 260 October Term 1889, Sup. Ct.; court below, No. 362 October Term 1889, C. P. No. 2.

On September 2, 1889, an amicable action of assumpsit was entered in the court below between Matilda G. MacConnell, plaintiff, and Reese Lindsay, defendant, the following case being stated for the opinion of the court:

On June 19, 1889, the plaintiff, Matilda G. MacConnell, devisee under the last will and testament of Eveline Gross, late of Pittsburgh, deceased, sold to the defendant, Reese Lindsay, a lot of ground situate at the northeast corner of Conrad and Harriet streets, in the Twentieth ward of the city of Pittsburgh, . . . . at and for the price or value of $3,300, of which the sum of $100 was then paid and the residue, $3,200, was to be paid on the delivery of a general warranty deed, on or before July 15, 1889; and it was agreed, inter alia, that the property was to be free from liens and encumbrances.

A deed in proper form, duly executed by the said Matilda G. MacConnell and by Thomas MacConnell, Jr., her husband, was duly tendered to said Reese Lindsay and the payment of said $3,200 demanded, but said Reese Lindsay refused to accept the title and to pay said sum of money, upon the ground that said deed would not pass to and vest in the purchaser a good title in fee-simple.

It is further agreed that Eveline Gross, late of the city of Pittsburgh, died, seised in fee-simple of the said lot of ground,

and by her will, duly probated September 4, 1888, and registered in the office of the register of wills, etc., in and for the county of Allegheny, she devised said lot of ground, being parcel of a larger tract of land and being also a part of the residuary estate of said testatrix, to said Matilda G. MacConnell, in the manner following, to wit:

"7. I hereby bequeath and devise to my said adopted daughter, Matilda Gross MacConnell, all the rest and residue of my estate, real, personal and mixed, absolutely and in fee-simple, and including therein any and all legacies which may lapse by reason of the decease of any beneficiary or otherwise; and it is my will that the said Matilda Gross MacConnell shall take and hold the property hereby given to her free from the control of her present or future husband, and without any liability for any debts, liabilities or engagements of such husband, but wholly for her own use and benefit, and subject to her own control."

If upon the agreed facts above stated, the court shall be of opinion that the plaintiff is entitled to recover, then judgment shall be entered in favor of the plaintiff and against the defendant, Reese Lindsay, for said sum of $3,200, with interest from July 15, 1889; but if the court shall be of the opinion that the plaintiff is not entitled to recover upon the facts stated, then judgment shall be entered against the plaintiff and in favor of the defendant for $100, the sum paid to plaintiff as aforesaid, and costs. Each of the said parties shall be entitled to an appeal and writ of certiorari to have the judgment which may be entered in this case reviewed by the Supreme Court.

After argument the court, Ewing, P. J., entered judgment on the case stated in favor of the plaintiff for $3,200, with interest from July 15, 1889, filing the following opinion:

The question in this case is, does the will of Eveline Gross devise to Mrs. Matilda G. MacConnell the ordinary statutory separate estate in the land in question, or does it give to her the technical trust estate for her separate use, excluding the marital rights of the husband? If the former, she has the power to convey a good title. If the latter, she cannot exercise any power not expressly given to her in the will: Lancaster v. Dolan, 1 R. 231; Wright v. Brown, 44 Pa. 224, overruling Haines v. Ellis, 24 Pa. 253.

The devise is in the following words : . . . . .

Reading the whole will, it is evident that the testatrix intended a large bounty and control thereof to her daughter, but we see nothing in the other parts of the will to control or affect the words used in the devising clause quoted.

It is impossible, to us, to reconcile the various Pennsylvania cases on this subject, even where not overruled.

What constitutes a sole and separate use ? It has been said that a clear intent to exclude the marital rights of the husband, constitutes a separate use. In Morrison v. Dollar S. Bank, 36 Leg. Int. 215, it is said that this is simply substituting one definition for another. While for her "separate use," or for her "sole and separate use," are the technical words to create such estate, yet no particular form of words is necessary. "It is sufficient if the instrument creating the estate distinctly and unequivocally express the intention to bar the husband's marital rights, and create an estate for the use of the wife separate from her husband's :" TRUNKEY, J., in Morrison v. Dollar S. Bank, supra.

Prior to the act of 1848, when marriage was practically a gift by the wife to the husband, or his creditors, of all she had at the time of her marriage, and all that should be given to her, or that she might inherit during coverture, the humanity of the judges revolting against the barbarity of the law, caused the courts to be liberal in construing bequests and devises to married women, as being for their sole and separate use.

Unless the effect of the words of this will is modified by the Married Woman's Act of 1848, and the Married Person's Property Act of 1887, it vests a sole and separate use in Mrs. MacConnell. She is to hold the property "free from the control of her present or future husband," without any liability for his debts, liabilities or engagements, and "wholly for her own use and benefit." As the law stood prior to 1848, this would have been a very complete exclusion . of the husband's marital rights, and at the same time a declaration that it is for the sole use and benefit of the wife independent of her husband; "wholly for her own use and benefit."

In Jamison v. Brady, 6 S. & R. 465, a bequest to "Martha Brady for her own use," she then being a married woman, was held to be for her separate use, and the husband was ex-

cluded. In Snyder v. Snyder, 10 Pa. 423, a bequest to a widow of all the real and personal estate of the testator for her own proper use during her life, and then over, was held to create a separate use, and to exclude the marital rights of a second husband. In Craig v. Watt, 8 W. 498, a devise to a widow for life, with a proviso that in case of re-marriage her husband should have no dominion over the property, was held to create an estate for the separate use of the widow.

The fundamental idea of a separate use is to bar the husband's dominion over the property, and to give the wife the use and benefit of it independent of the husband. It is well settled in Pennsylvania that the intervention or non-intervention of a trustee, to hold the legal title to protect the separate use, is immaterial: Wright v. Brown, supra.

Logically, a devise in favor of a married woman which in terms barred no dominion of the husband except that which the law does not give him, should be held to convey the same estate which it would convey by a simple devise in fee, without mentioning the husband or the use. A proviso which would in terms forbid the devise by a husband of his wife's land, would not be supposed to create a separate use or to have any effect whatever.

By the act of April 11, 1848, the property of a married woman, owned before marriage or acquired by will or otherwise after marriage, "shall be owned, used and enjoyed by her as her own separate property, and shall not be subject to the debts or liabilities of her husband." The Married Person's Property Act of 1887 still further enlarges the powers of a married woman over her property, and as to its management, control and use for her own benefit, she is as though she were a feme-sole, except that she cannot convey or mortgage it without the consent of her husband. The act is in these words: "That hereafter marriage shall not be held to impose any disability on or incapacity in a married woman as to the acquisition, ownership, possession, control, use or disposition of property of any kind, in any trade or business in which she may engage. . . . . But every married woman shall have the same right to acquire, hold, possess, improve, control, use or dispose of her property, real and personal, in possession or expectancy, in the same manner as if she were a feme-sole,

without the intervention of a trustee, and with all the rights and liabilities incident thereto, except as hereinafter provided, as if she were not married; and property of every kind, owned, acquired or earned by a woman before or during marriage shall belong to her, and not to her husband or his creditors." The exception is, that she cannot mortgage or convey her real estate without her husband joins in the mortgage or conveyance.

With these acts of assembly in force, the will of Mrs. Gross "became of effect" at her death, in 1888. Her will excludes the husband of Mrs. MacConnell from no right or dominion over the property from which the law does not exclude him. In Rank v. Rank, 120 Pa. 191, and other cases, it is declared that even in the case of a separate use in the wife, the husband has his life estate after her death. What right to use or enjoy the property, or to control it for her own use, has Mrs. MacConnell, under the terms of the will, which she would not have had if the last clause of the eighth paragraph of the will had been wholly omitted?

In Todd's App., 24 Pa. 429, it was held that, the separate estate of a married woman means "an estate held by somebody in trust for her, and not an estate the legal title to which is in herself." And in Haines v. Ellis, 24 Pa. 253, it was held that under the act of 1848 all these separate estates, whether held in trust or not, were alienable as directed under the act of 1848 and its supplements.

In Wright v. Brown, 44 Pa. 224, these cases were overruled, and it was held that the act of 1848 did not apply to the separate estate of a married woman as it had theretofore been defined, whether held by a trustee or the legal title devolved on the married woman, and that the law in regard to separate uses was wholly unaffected by the act of 1848. In that case, which was a devise in fee-simple to the daughter of the testator, followed by words which clearly limited it to a separate use, there was no question discussed, says Justice GREEN, in Ringe v. Kellner, 99 Pa. 460, as to the character of the devise, conceding it to be a separate use, but the controversy was on the power of alienation in view of the act of 1848, and it was held that that act did not affect this class of estates, to wit, equitable separate estates. The case of Wright v. Brown has been followed without serious dissent, though the tendency has been to hold

estates to be untrammeled by a technical separate use. In Bailey v. Allegheny N. Bank, 104 Pa. 425, under a testamentary trust "that no one of the husbands or wives of my said children shall have any interest or control over the property bequeathed, but the shares of my said children shall belong to them separately and exclusively," it was held not to create a sole and separate use.

Granting that the decision in Wright v. Brown is strictly correct, that the separate trust estate of a married woman is not alienable under the act of 1848, is not included in that act, it does not follow that the act should not have an effect in determining what words are necessary to create such estate.

Under the act of 1887, what place would there be under this will for declaring the husband, or any other person, a trustee for the wife as in a sole and separate use? The act says the married woman shall " hold, possess, control and use her property as if she were a feme-sole without the intervention of any trustee." If Mrs. MacConnell were in fact feme-sole she could convey a good title. This will gives to Mrs. MacConnell precisely the estate which the law would have made it had the testatrix added no words after the words, " I devise and bequeath all the rest and residue of my estate, real and personal, to Matilda Gross MacConnell in fee-simple," unless the statutes of 1848 and 1887 are to be held not to mean what they say, and judicial interpretation, following a technical rule for which the reason has passed away, shall annex a condition plainly not intended by the testatrix and injurious to the devisee and to the public interest.

We are of the opinion that the will in question vested in the plaintiff an estate in fee-simple which she has power to convey and that the plaintiff is entitled to recover.

Judgment having been entered for the plaintiff for the sum of $3,200, with interest from July 15, 1889, the defendant took this appeal, specifying that the court erred:

1. In not entering judgment for the defendant for $100 and costs.

2. In entering the judgment rendered for the plaintiff.

*Mr. J. A. Evans*, for the appellant:

Arguments.

1. That the words of this will would have created an estate to the sole and separate use of Mrs. MacConnell, prior to the Married Woman's act of April 11, 1848, P. L. 536, seems hardly open to question. The husband's rights are barred by apt words, and the estate is limited to the use of the wife exclusive of her husband. No particular words are necessary to create a sole and separate use for the benefit of a married woman: Jamison v. Brady, 6 S. & R. 465; Snyder v. Snyder, 10 Pa. 423. The act of 1848 has not changed the law as to the creation or the alienation of such estates: Penna. Co. v. Foster, 35 Pa. 134; Wright v. Brown, 44 Pa. 224. Nor can the Married Person's Property act of June 3, 1887, P. L. 332, affect sole and separate uses, unless the wife be held to be as though she were sole as to her equitable estate.

2. The only words in the will considered in Wright v. Brown, supra, which are not in the will of Mrs. Gross, are the words, "sole and separate." But these are not technical words in the creation of such estates, and the word "wholly" expresses the idea of an exclusive use just as fully. No right or dominion of the husband was barred by the will in Wright v. Brown, for he had none except curtesy, and this is not affected by the creation of a separate use: Van Rensselaer v. Dunkin, 24 Pa. 252; Dubs v. Dubs, 31 Pa. 149; Rank v. Rank, 120 Pa. 191; Faries' App., 23 Pa. 29. The giving of the fee to Mrs. MacConnell in the first clause of paragraph seven of the will does not confer upon her the power of alienation: Cochran v. O'Hern, 4 W. & S. 95; Wright v. Brown, 44 Pa. 224. She has no power of disposition not clearly and positively given her: Lancaster v. Dolan, 1 R. 231; Thomas v. Folwell, 2 Wh. 11; Wright v. Brown, supra. In Ringe v. Kellner, 99 Pa. 460, there was no limitation to the wife's use, and that case is not in point.

*Mr. A. M. Brown* and *Mr. D. T. Watson*, for the appellee:

1. In order to raise an equitable separate use or trust estate for a wife, the instrument of creation must unequivocally express such intention: Morrison v. Bank, 36 Leg. Int. 215; Tritt v. Colwell, 31 Pa. 228. In the will of Mrs. Gross there is no sign of such an intention; on the contrary, the words used are almost identical with the language of the act of April 11, 1848, P. L. 536, and the will is in its thought a substantial

Arguments.

reproduction of § 6 of that act, evidently intending a plain, unambiguous devise of a legal estate, with all its incidents of use, benefit and control.   The devise is "absolutely and in fee-simple," and "subject to her own control."   If the intention were doubtful, the policy of the law favors a construction which would make the estate vest absolutely and conformably to the general rules of inheritance, without limitation.

2. Ringe v. Kellner, 99 Pa. 460, is directly in point and conclusive of the present controversy.   The expression "separate estate" always refers to an equitable estate, held in trust for a married woman; if she has the legal title, she has no separate estate, for the legal incidents of the marriage relation accompany it: Todd's App., 24 Pa. 429.   So, if she be given control of the property or fund which is given in trust in order to oust the husband's marital rights: Chrisman v. Wagoner, 9 Pa. 473. The words "not liable for the debts of her husband" are not sufficient to create a separate use: Morrison v. Bank, 36 Leg. Int. 215; nor are the words "exclusively of her husband:" Rank v. Rank, 120 Pa. 191.   The intervention of trustees holding for the use of a married woman, is not of itself sufficient for that purpose: Dakins v. Beresford, 1 Ch. C. 194; Lumb v. Milnes, 5 Ves. 517; Evans v. Knorr, 4 R. 66.

3. Haines v. Ellis, 24 Pa. 253, was overruled in Wright v. Brown, 44 Pa. 224, upon one point only, and there was no intimation that it was not rightly decided upon its merits.   The later cases of Rank v. Rank, 120 Pa. 191, and Bailey v. Bank, 104 Pa. 425, and other cases, seem fully to affirm the conclusion reached in Haines v. Ellis, that husband and wife may sell property devised or conveyed to a married woman in fee-simple, although limited to her own separate use.   The title of the married woman in Wright v. Brown, was undoubtedly a separate use trust and she had no fee-simple estate.   In such a case, the husband has no curtesy: Cochran v. O'Hern, 4 W. & S. 95.   But a so-called separate use trust, where the wife has a legal or equitable title in fee, is at most merely a dry trust. We submit, however, that under the act of June 3, 1887, P. L. 332, the opinion in Haines v. Ellis would be good law.

OPINION, MR. JUSTICE CLARK:

At common law a married woman could not hold and enjoy

property, real or personal, separate from and independent of her husband. The right of the wife to take property to her separate use originated in equity, and, in Pennsylvania, this, in addition to her statutory right, is still enforced upon principles of equity, which have been recognized since the reign of Elizabeth. This separate estate of the wife was sustained in equity, in order that it might be possible for the husband, or for any other persons, desiring to make a settlement upon the wife, to so secure their bounty that it would not be subject either to the improvidence or to the control of the husband: Rennie v. Ritchie, 12 Cl. & F. 234. The general doctrine upon which this separate estate of the wife rests in Pennsylvania is peculiar; its peculiarity being found in the particular purpose intended to be accomplished. The rule in England and in most of the states of the Union has been to treat the wife as the absolute owner, possessing the jus disponendi and the incidental power of charging the estate with debts, created with reference to and upon the faith and credit of the estate, as if she were feme-sole: Taylor v. Meads, 34 Law J. Ch. 203; Picard v. Hine, L. R. 5 Ch. 274. See, also, Bispham's Eq., § 101, and cases there cited. This doctrine has been somewhat modified by recent decisions, and to some extent is controlled by statute. Its effect has also been restricted in practice by inserting a clause against anticipation, which imposed a certain restraint upon alienation, but the general doctrine is still recognized.

In Pennsylvania, however, and in some of the states, the English rule was not adhered to. The first departure from it was in Ewing v. Smith, 3 Des. Eq. 417, which was followed in this state by Lancaster v. Dolan, 1 R. 231, where it was held that a feme-covert is, in respect to her separate estate, to be deemed a feme-sole only to the extent of the power clearly given her by the instrument by which the estate is settled, and has no right of disposition beyond that. "Nothing in the law," says Chief Justice GIBSON, in the case just cited, "is more to be deprecated than those decisions in which the right of the cestui que trust to dispose of his estate has been recognized. Every attempt to secure a provision to a spendthrift child must prove abortive while the trustees are bound to follow any disposition of it which he may make. It is still more unfortunate

that, as regards their separate estates, femes-covert have been regarded in equity as femes-sole. It has been justly remarked that, if the principle be pushed to its extent, a married woman who has trustees will be infinitely worse protected than if she were left to her legal rights." "The object," says the same learned judge, in Thomas v. Folwell, 2 Wh. 11, "is not so much to give her the dominion of the feme-sole, which every man of experience knows would, in a countless number of instances, defeat the principal intent, as to withdraw the estate from the dominion of the husband; and we might expect it to occur to those who are called to the interpretation of these instruments that the surest way to accomplish this would be to restrain the power of both. The donor has doubtless capacity to remove by the instrumentality of a trust the disability annexed to coverture by the common law, so far, even, as to give the wife the power of a feme-sole, and there may be examples of feminine firmness that would render it safe in particular instances to do so; but it would expose a woman of ordinary resolution to perils from which she would be protected by the common law, the practical wisdom of whose maxims, matured as they are by the experience of a thousand years, no thoroughbred lawyer will hesitate to admit. We therefore hold it to be the settled law of Pennsylvania that, instead of having every power from which she is not negatively debarred in the conveyance, she shall be deemed to have none but what is positively given or reserved to her." To the same effect are Wallace v. Coston, 9 W. 137; Wright v. Brown, 44 Pa. 224; and McMullin v. Beatty, 56 Pa. 389. The rule is now well settled that neither the feme-covert, nor her husband, nor both together, have any powers over her separate estate, except what are given by the trust instrument, and that even these must be strictly construed.

There can be no question, of course, as to the right of the donor to invest the wife with the full powers of a feme-sole, if he chooses so to do; and when this intention is clearly manifested it must prevail. The principle is to be applied, not as a rule of property, but as a rule of construction only. Whilst recent statutory provisions have, perhaps, to some extent, circumscribed the necessities which originally called for the intervention of equity, it is plain, we think, that the precise purpose

which equity had in view is yet unsecured by statute; and there seems to be nothing in the statutory provisions to indicate that the legislature intended to abrogate the rule or dispense with the estate which, under our equity practice, has been so long recognized as a proper protection for a married woman, not only against the power and persuasions of her husband, but against his and her own improvidence.

Prior to the passage of the act of April 11, 1848, P. L. 536, a married woman could have no separate estate of her own at law; such an estate existed only in equity. If the wife's title was legal, there could be no separate use, for the marital rights of the husband were necessarily incidental to the legal estate: Todd's App., 24 Pa. 429. In the case of an equitable separate estate, the legal title either was, or was assumed to be, held in trust for her; and if in the instrument creating the estate no trustee was named, equity supplied a trustee in the person of her husband. But under the act of 1848 she was invested with a separate estate at law; all the property of a single woman continued to be her property, as fully after marriage as before, and all accruing to her during coverture was owned, used, and enjoyed by her as her own separate property. She owned, used, and enjoyed it, not as a feme-sole, as was said in Cummings' App., 11 Pa. 275, but as a feme-covert, the same as if it had been settled to her use, with such incidental and restrictive powers of alienation, however, as are conferred by the statute: Pettit v. Fretz, 33 Pa. 118. But the provisions of the act of 1848 did radically change her rights at law. By the common law, the husband succeeded to her dominion over her personal property and her choses in action; by reducing them into possession, they became absolutely his. He became entitled, also, to the use and enjoyment of her real estate, owning its rents, issues, and profits. The consequence was that all the property she brought to her husband, except a remainder in her real estate upon his death, was liable to be seized and sold at the suit of his creditors. Instances had occurred in which a wife, who had brought property to her husband, had seen it all swept away, and herself left to destitution, through the improvidence, misfortune, or even vice of her husband. It had perhaps gone to pay debts which he had contracted before the marriage. Such cases appealed strongly to the sympathies of the legisla-

ture, and were doubtless the moving cause of the enactment of April 11, 1848. Here was the mischief to be remedied, and the statute is the remedy provided. In Haines v. Ellis, 24 Pa. 253, which was a case arising after the act of 1848, a conveyance was made to a married woman, her heirs and assigns, " to and for the only, sole, separate, and proper use and behoof of herself, her heirs and assigns, forever; " it was held whether this created an equitable separate estate or not was immaterial, as, in any event, in the absence of any restriction in the deed, the husband and wife, under the act of 1848, had full power and right to convey. But in a more recent case, Penna. Co. v. Foster, 35 Pa. 134, it was most explicitly declared that the act of April 11, 1848, did not enable a married woman to dispose of property held by a trustee for her separate use, and that over such property, notwithstanding the act of 1848, she had no power not expressed in the instrument by which the trust was created. In the course of the opinion filed, this court said: " Is this equity principle affected or set aside by the act of 11th April, 1848, § 6? We think not, for the kind of separate estate thereby created is a legal one, and totally distinct from the equitable separate estate created by the tripartite agreement. The act creates a new kind of separate estate, without abolishing the old one. In providing a mode of disposing of her new legal acquisitions of separate estate, it does not include those equitable estates that are acquired by others in trust for her separate use. " The case just cited was followed by Wright v. Brown, 44 Pa. 224, where the whole subject was fully discussed in an opinion by Mr. Justice STRONG, and Haines v. Ellis, supra, was expressly and in terms overruled. The learned justice said: " Certainly, however, unless the act of 1848 caused a change, a deed to a married woman for her separate use does create a trust, though no trustee be named, and it is restrictive of the wife's power to sell or mortgage. On that subject, silence is prohibition; and it is plain that the act of 1848 has no reference to the form or effect of a deed or will. It touches only the effects of the marriage relation. It does not undertake to say that what was a trust before its passage is a trust no longer, or to make that a legal estate which before was merely equitable. The truth is, Haines v. Ellis is not consistent with the doctrine asserted in the later case, Penna. Co. v. Foster, 11 Cas. 134.

There is no substantial difference between a trust implied from the separate nature of the use declared, and one expressly given in trust for a separate use ; and if, as was held in the case in 11 Cas. the latter is not affected by the act of 1848, the former cannot be." That the rule in Wright v. Brown, supra, has been steadily maintained, appears upon reference to Maurer's App., 86 Pa. 380, and also to the very late case of Twining's App., 97 Pa. 36.

The act of June 3, 1887, P. L. 332, provides in substance, inter alia, that marriage shall not be held to impose any disability or incapacity on a married woman, as to the acquisition, ownership, possession, control, use, or disposition of property of any kind, in any trade or business in which she may engage, or in the enjoyment or improvement of her separate estate, real or personal; but that she shall be capable of entering into and rendering herself liable for any contract or obligation relating to the ownership, disposition, enjoyment, or improvement thereof ; that every married woman shall have the same right to acquire, hold, possess, improve, control, use, or dispose of her property, real or personal, in possession or expectancy, in the same manner as if she were a feme-sole, without the intervention of any trustee, with all the rights and liabilities incidental thereto, with certain exceptions, as if she were not married ; and that property of every kind, owned, acquired, or earned by a woman before or during her marriage, shall belong to her, and not to her husband or his creditors. Further, that she may make, execute, and deliver leases of her property, real and personal, in person or by attorney, but in any mortgage or conveyance of her real estate she must be joined by her husband.

Thus it will be seen that whilst the effect of the act of 1848 was to deprive the husband of certain common law rights, which accrued to him by marriage, in his wife's property, the act of 1887 was intended to perfect the wife's means and facilities for enjoyment of the property, the title to which by the act of 1848 was secured to her from her husband and his creditors. The act was passed for the benefit of the wife, and was designed to enable her to improve and enjoy her own estate free from the interference of her husband, or any one claiming under him. It should, therefore, receive such reasonable and

liberal construction as will promote the purpose of its enactment. But it is plain that its provisions, like those of the act of 1848, apply to the separate estate at law of the married woman, as distinguished from the separate estate which has always existed in equity only. The owner of real estate, so long as he contravenes no rule of law or of public policy, may undoubtedly make such a settlement of it upon another as he chooses, and there is nothing in the act of 1887 which would deny the right of the donor to set up a trust for the maintenance and protection of a married woman, securing his bounty as heretofore. The passage of these acts does not affect the right of a married woman to a settlement of her estate upon herself. They are an enlargement, and not a diminution of her rights. In other states it has been held that the jurisdiction of courts of equity over the property and proprietary rights of married women is not taken away by statutes of this character, but the equity powers of the court may still be invoked, where it is necessary to secure their separate property to their use, according to the intention of the statutes, or the intention of the donors of such property: Colvin v. Currier, 22 Barb. 371; Mitchell v. Otey, 23 Miss. 236; Richardson v. Stodder, 100 Mass. 528; Sampley v. Watson, 43 Ala. 377. See, also, Perry on Trusts, § 677. The property embraced in a settlement is only the property of the wife under the terms of the settlement, upon which the act of 1887 can have no effect whatever. The incapacity of a married woman to dispose of property held to her separate use, without express power of disposition, does not depend upon her disabilities at common law, but upon the terms of the settlement itself; and, as the acts of 1848 and 1887 were only intended to remove the former, they can, of course, have no effect upon the latter.

Nor has either the act of 1848 or the act of 1887, nor both of them together, dispensed with the necessity which orginally gave rise to this equity. Heretofore a married woman was protected from her own improvidence, as well as the improvidence of her husband, by her disabilities; and, as these disabilities are now to a great extent removed, the necessity is increased, rather than diminished. Her disabilities, her want of power to yield to her husband's solicitations, or to give way to her own sympathies, have always been supposed to afford her

the highest protection. Complete protection, as the law now stands, therefore, is found only in a trust for her separate use. We are clearly of opinion, therefore, that since the act of 1887 a settlement of land in trust may still be made upon a married woman for her separate use, and subject to the same rules of equity as heretofore.

But, assuming all that has been said, it is contended that the acts of 1848 and 1887, taken together, are not without effect in the construction of the instrument upon which the settlement depends; that, since by the act of 1848 the property of a married woman is owned by her "after marriage as before," and is owned, used, and enjoyed by her "as her own separate property," free from the debts and liabilities of her husband, and by the act of 1887, she has the right to acquire, improve, or dispose of her property "as if she were a feme sole," and property of every kind owned, acquired, or earned by her, before or during marriage, belongs "to her, and not to her husband, or his creditors," more particularity of expression is now required than formerly in Pennsylvania to create what is known as a separate use trust, as distinguished from a separate use, under the statute. But if it be true, as we have already shown, that these acts relate only to estates created by and existing under the law, and have no reference whatever to the separate equitable estate of a married woman, we cannot see how the language of these acts can in any way be applied in the construction of instruments which, under the numerous decisions of this court, have been held to create a separate estate recognized only in equity. We cannot say that what was a trust before is a trust no longer, or make that a legal estate which, according to a well-established rule of property, has always heretofore been held to be an equitable separate estate only.

Eveline Gross died after the passage of the act of June 3, 1887. Her last will and testament was probated September 4, 1888. By her will she provided, inter alia, as follows: "I hereby bequeath and devise to my said adopted daughter, Matilda Gross MacConnell, all the rest and residue of my estate, real, personal, and mixed, absolutely and in fee-simple, and including therein any and all legacies which may lapse by reason of the decease of any beneficiary or otherwise; and it is my will that the said Matilda Gross MacConnell shall take

and hold the property hereby given to her free from the control of her present or future husband, and without any liability for any debts, liabilities, or engagements of such husband, but wholly for her own use and benefit, and subject to her own control." Embraced in this residue was the lot of ground situate at the northeast corner of Conrad and Harriet streets, in the Twentieth ward of the city of Pittsburgh, which Matilda Gross MacConnell subsequently sold to Reese Lindsay. The words of this will were, without doubt, according to all the cases, sufficient to establish a valid separate use trust in Matilda Gross MacConnell. We do not understand this to be seriously disputed. The instrument clearly speaks the donor's intention to bar the husband's marital rights; it is a conveyance wholly to her own use and benefit, and subject to her own control. It is immaterial that no trustee was appointed, for equity will supply a trustee; nor is it of any consequence that no active duties were imposed, for the creation and existence of a separate use is, in equity, sufficient to support the trust against the effect of the statute of uses. No particular words have ever been held essential or indispensable for this purpose; it is enough that the expression of the conveyance should be such as to clearly indicate the intention of the donor.

The judgment is reversed, and judgment is now entered in favor of the defendant, on the case stated, for the sum of $100, with interest from the 19th June, 1889, and costs.