# BERGLAND *v.* OWEN.


TRUSTS; PASSIVE OR ACTIVE; FOR MARRIED WOMEN; STATUTE OF USES;
            MARRIED WOMAN'S ACT; LIFE TENANCY.

1. A trust created for the sole and separate use of a *feme covert* is valid
   irrespective of whether it is passive or active, and is not subject to
   the Statute of Uses.

2. Equitable estates created for the sole and separate use of married
   women are not abolished by the Married Woman's Act of 1869 (16
   Stat. at L. 45, chap. 23), as that act sought to increase rather than
   diminish the rights of the wife. (Citing *McCormick* v. *Hammersley,*
   1 App. D. C. 313, 317; and *Fields* v. *Gwynn,* 19 App. D. C. 99, 111.)

3. Where an equitable estate is granted to a life tenant and a legal estate
   to the remaindermen, the two estates do not coalesce under the
   rule in *Shelley's Case.*    (Citing *Slater* v. *Rudderforth,* 25 App. D.
   C. 504; and *Sims* v. *Georgetown College,* 1 App. D. C. 72, 80.)

NOTE.—Authorities passing on the rule in *Shelley's Case* are collated
in a comprehensive note in 29 L.R.A. (N.S.) 963.

4. A judgment which by inadvertence gives plaintiffs the entire interest in the property, whereas they are entitled to and have only asked for two thirds of it, requires a reversal at their cost, but with direction to enter a judgment in their favor for the two thirds they are entitled to.

No. 3118. Submitted April 3, 1918. Decided May 6, 1918.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action to recover an interest in real estate.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal involves the title to a piece of real estate of which Robert Earl was the owner in fee simple in 1866. He then made a will, which devised the property unto Solomon Stover in trust for his daughter, Mary Hilbus, "to be for the sole use, benefit, and behoof of her, the said Mrs. Mary Hilbus, for and during the term of her natural life, free from any control or interest, claim or demand, of any future husband that she may marry, or of any of her children, or of any person or persons whomsoever, and at her death the said lots of ground and premises, with the appurtenances, to be the property of her heirs in fee simple forever." At the time the will was made, Mrs. Hilbus was a widow with three children. Her father died in 1874. In 1890, sixteen years thereafter, she assumed to convey the title in fee simple to one Wheelwright, through whom appellant, Eric Bergland, claims. She died in 1913, leaving two children and children of another child who had predeceased her. The two children, Fanny J. Owen and Margaret Sangston, brought this action to recover a two-thirds interest in the property, alleging that their mother had only a life estate, and that by virtue of the will, they upon her death became the owners in fee simple of the part for which they sued.

*Mr. Wm. G. Johnson,* for the appellant, in his brief cited:

*Bank* v. *Hitz,* 1 Mackey, 138; *Bowen* v. *Chase,* 94 U. S. 812;

*Brown* v. *Wadsworth,* 168 N. Y. 232; *De Vaughn* v. *De Vaughn,* 3 App. D. C. 50; *Fields* v. *Gwynn,* 19 App. D. C. 99; *Frey* v. *Allen,* 9 App. D. C. 400; *Hitz* v. *National Metropolitan Bank,* 111 U. S. 722; *Keyser* v. *Hitz,* 113 U. S. 138; *Malloon* v. *McGrew,* 112 U. S. 713; *Smith* v. *Smith,* 21 D. C. 289; *Stickney* v. *Stickney,* 131 U. S. 227; *Sykes* v. *Chadwick,* 18 Wall. 141; *Uhler* v. *Adams,* 1 App. D. C. 392; *Zeust* v. *Staffan,* 14 App. D. C. 200.

*Mr. Charles A. Keigwin* and *Mr. C. Albert White,* for the appellee.

*Mr. Chief Justice* SMYTH delivered the opinion of the Court:

It must be conceded that the will upon its face discloses a clear intention upon the part of the father to give to his daughter, Mrs. Hilbus, only a life estate, and that upon her death the legal title should pass to her heirs, who he believed would be her children. It is therefore our duty to respect and enforce this intention unless we are prevented from doing so by some inflexible rule of law.

Appellant says that the trust created was a passive one, and that under the Statute of Uses, 27 Hen. VIII. chap. 10, it was executed in Mrs. Hilbus and the legal title thereby vested in her. On this ground alone, the right of the plaintiffs is challenged. Appellant concedes, as he must, that the trust was made for the purpose of protecting the property rights of Mrs. Hilbus in case she should marry again, but asserts that it was not necessary, and accomplished nothing in that regard, because, as he claims, under the Married Woman's Act of 1869 (16 Stat. at L. 45, chap. 23), she, as a married woman, would have all the protection afforded by the trust, and therefore since the trust was not necessary, no matter what its purpose, it is not saved from the operation of the Statute of Uses. In other words, that under that statute Mrs. Hilbus acquired a legal title in fee simple, and consequently was able to convey it to the appellant's grantor.

Because of the common law which gave a husband the man-

agement and control of his wife's property, equity many generations ago, desiring to protect her property against the husband's interference, raised an estate for her sole and separate use. This estate was governed in many particulars by rules differing from those which were incident to ordinary legal and equitable estates. Bispham, Eq. 9th ed. sec. 98. It was created by a conveyance in trust either to the wife, in which case the husband became trustee, or to a trustee for her separate use. In either event, it was free from the husband's control. Id. sec. 99. The wife had in it just such an interest as the settler of the trust prescribed,—no more, no less. Estates of this character arose, in the language of the Supreme Court of the United States, "solely out of the intent of the party who created them, and therefore such intent could be the only guide in the execution of them." *Green* v. *Green,* 23 Wall. 490, 23 L. ed. 77; see also *Pennsylvania Co. for Ins. on Lives* v. *Foster,* 35 Pa. 136. In the case of trusts generally the Statute of Uses executed the use in the *cestui que trust* where the trust was dry or passive. *McKenzie* v. *Sumner,* 114 N. C. 425, 19 S. E. 375; *Tappan's Appeal,* 55 N. H. 317; *Greene* v. *Greene,* 125 N. Y. 506, 21 Am. St. Rep. 743, 26 N. E. 739.

There seems, however, to be a dispute among the old authorities as to whether or not this rule applied to estates created for the protection of a *feme covert.* In *Ware* v. *Richardson,* 3 Md. 505, 549, 56 Am. Dec. 762, an illuminating opinion, the Maryland court of appeals said: "Most of the elementary writers broadly assert that where the trustee is to hold in trust for the *sole and separate* use of a married woman, it is a trust, and not a use executed under the statute." Citing 1 Cruise's Dig. 456; 2 Crabb, Real Prop. 509; Clancy, Husb. & Wife, 256. The court, none the less, expressed the view that this was not a correct statement of the rule as it first existed, and pointed out that other early authorities hold that even in the case of such an estate the use was executed wherever the trust was passive; but concludes thus: "The later, and more modern decisions, however, seem to favor a more liberal construction of deeds and wills in order to reach the real intention of their makers, and therefore in all cases where an estate is devised or conveyed

to trustees *for the separate use of a married woman* and her heirs, this court will, if possible, so construe the instrument as to vest the legal estate in the trustees, because such a construction will best effectuate the intention of the donor." Mr. Clancy in his work on Husband and Wife wrote: "Where lands are devised in trust, as to the rents and profits, for the sole and separate use of a married woman, it is immaterial whether the trust be declared to be 'to pay the rents and profits to her' or 'to permit her to receive the rents and profits,' as in either case it would be held that the use was not executed." In the case at bar Mrs. Hilbus was permitted to receive the rents and profits, instead of having them collected for her by the trustee, but this, according to Mr. Clancy, makes no difference. In other words, following this authority, it is immaterial whether the trust be active or passive. Lord Kenyon in *Harton* v. *Harton,* 7 T. R. 652, 101 Eng. Reprint, 1181, declared: "That whether this were a use executed in the trustees or not must depend upon the intention of the devisor." The manifest intention of Mr. Earl was that the use should be executed in the trustee, and not in his daughter, Mrs. Hilbus. Speaking in a similar case, *Richardson* v. *Stodder,* 100 Mass. 528, 529, the supreme judicial court of Massachusetts ruled: "But the fact of her coverture, with the statement that the devise to Mr. Stodder is in trust, sufficiently indicate the intention not to create a mere use to be executed under the statute, but a trust during the coverture." And the Supreme Court of the United States in *Bowen* v. *Chase,* 94 U. S. 812, 817, 24 L. ed. 184, 185, stated this conclusion: "But we think that the authorities are very clear that where a trust is thus created for the benefit of a married woman, for the purpose of giving her the separate use and control of lands free from the control of her husband, it will be sustained." In that case the *cestui que trust* was, as here, permitted to collect the rents, and the trustee was not expressly required to do anything.

This court, in *Frey* v. *Allen,* 9 App. D. C. 400, 404, used this language: "Moreover, the limitation of the estate to the 'sole use and benefit' of the wife operated, in accordance with the generally recognized policy of the law in respect of the

separate estates of married women, to prevent the execution of the trust and its conversion into a legal estate." It is true the trust in that case was an active one, but the court did not rest its decision upon that alone, but gave, as the excerpt shows, an additional reason for holding that the trust was licit. "And if the intention was to give a separate interest to the wife, free from the control of her husband, then it is very clear that this provision for the wife is to be regarded by a court of equity as a technical trust, and not as a use executed by the Stat. 27 Hen. VIII. chap. 10." *Ayer* v. *Ayer,* 16 Pick. 330. In that case no action was required on the part of the trustee.

We take the following from an opinion by the court of appeals of South Carolina in *Williman* v. *Holmes,* 4 Rich. Eq. 475, 479, speaking of the *cestui que trust:* "If Eliza Davidson had been a *feme sole,* there would have been specious reasons for the opinion that the statute would have executed the uses on the death of the testator, and that she would forthwith have been invested with the legal title, discharged of the trust. But she was at that time the wife of Gilbert Davidson, and the form and language of the devise is peculiarly adapted for the creation of a separate estate in trust for the benefit of a married woman; and one which the potential magic of the statute would fail to destroy.   *   *   *   A trust to preserve the separate estate of a married woman is of that class of trusts which the Statute of Uses does not execute."

We are satisfied that the greater weight, if not the entire weight, of modern authorities upon the subject, is to the effect that a trust created for the sole and separate use of a *feme covert* is valid irrespective of whether it is passive or active, and is not subject to the Statute of Uses.

The Married Woman's Act of 1869 does not by its terms abolish equitable estates created for the sole and separate use of married women. Nor does it furnish any warrant for such an inference. Its obvious purpose was to destroy the husband's interest in and control over the property of the wife, with the possible exception of his right to curtesy, a point which we do not decide, because not necessary. The act sought to increase rather than diminish the rights of the wife. This would not

be accomplished if we should construe it as forbidding the creation of an equitable estate for her separate use which was licit before its passage. So far as the act is concerned, all the rights which the wife had before its enactment are preserved.

In *McCormick* v. *Hammersley,* 1 App. D. C. 313, 317, it is said of this act: "The sole effect of the statute is simply to abolish the control of the husband over her separate estate, and to dispense with the necessity of his intervention in regard to it in dealing with third parties."

The late chief justice, speaking to the point now before us, observed in *Fields* v. *Gwynn,* 19 App. D. C. 99, 111: "As the statute does not expressly prohibit, or put an end to, the creation of these time-honored equitable separate estates by deed or will, with their recognized limitations, courts of equity will not raise up an intent so to do by implication."

If authorities outside of this jurisdiction be required, they are at hand. In *Short* v. *Battle,* 52 Ala. 456, 463, it was ruled that it could not be supposed that "the statute is designed to affect the capacity of a donor to devolve on a woman, married or sole, any estate not prohibited by law—or to diminish the capacity of the woman to take."

"The act creates a new kind of separate estate without abolishing the old one." *Pennsylvania Co. for Ins. on Lives* v. *Foster,* 35 Pa. 136.

"These statutes, which secure to married women separate estates, do not interfere with, nor were they intended to abolish or abridge or interfere with these equitable estates, which exist in trust and arise out of settlements on *feme covert,* by deed or devise." *Musson* v. *Trigg,* 51 Miss. 172, 183.

The equitable estate then for the separate use of a *feme covert* still exists notwithstanding the passage of the Married Woman's Act.

Even if it could be correctly said that this act gave to Mrs. Hilbus all the protection that the trust in her favor gave, it would be immaterial. Equitable estates for the separate use of married women are as firmly established in our jurisprudence as any other kind of estates. The doctrine upon which they rest and by which they are governed is a rule of property, long

existing; and the reasons, whatever they may be, which led to its establishment, need not be considered; they have been absorbed by it. The rule now stands unaided by the causes which gave it birth. We may say of it what was said by the United States Supreme Court of the rule in *Shelley's Case:* "Whether it had a legal and substantial foundation when first pronounced or yet has, whether it is a useful rule of property or part of the *débris* of an ancient system having now only the mischievous vitality of frustrating the intention of a grantor or testator, we need not consider. It is conceded to be a rule of property in the District of Columbia, and we are brought to the question whether, consistently with it, the intention which we have seen Vogt has expressed may be executed." *Vogt* v. *Graff,* 222 U. S. 404, 410, 56 L. ed. 249, 251, 32 Sup. Ct. Rep. 134. The same court said that "where questions arise which affect titles to land it is of great importance to the public that when they are once decided they should no longer be considered open. Such decisions become rules of property, and many titles may be injuriously affected by their change." *Minnesota Min. Co.* v. *National Min. Co.* 3 Wall. 332, 334, 18 L. ed. 42, 43. "A rule of property is one thing; a rule respecting the validity of a class of contracts which may or may not affect titles to property is another and different thing." *Edwards* v. *Davenport,* 4 McCrary, 756, 20 Fed. 756, 763.

It was pertinently observed in *MacConnell* v. *Lindsay,* 131 Pa. 476, 491, 19 Atl. 306, as follows: "We cannot say that what was a trust before is a trust no longer, or make that a legal estate which, according to a well-established rule of property, has always heretofore been held to be an equitable estate only." See also *Gee* v. *Williamson,* 1 Port. (Ala.) 313, 27 Am. Dec. 628, 634; *Rumsey* v. *New York & N. E. R. Co.* 133 N. Y. 79, 15 L.R.A. 618, 28 Am. St. Rep. 608, 30 N. E. 654; *Truxton* v. *Fait & S. Co.* 1 Penn. (Del.) 483, 73 Am. St. Rep. 99, 42 Atl. 431; *Peet* v. *Peet,* 229 Ill. 341, 13 L.R.A.(N.S.) 780, 82 N. E. 376, 11 Ann. Cas. 492. With the wisdom or necessity of the rule, we have nothing to do. If it is to be changed, Congress, not the courts, should do it.

The language of the will whereby the estate is granted to the

trustee for the sole use, etc., of Mrs. Hilbus, and at her death "to be the property of her heirs in fee simple forever," is open to the inference that it was the intention of the testator that the heirs should take directly from him; that they should be the *termini* from which succession was to commence. In other words, that the term "heirs" should be treated as a word of purchase rather than a word of limitation. If this be correct, then the rule in *Shelley's Case* would not apply. But whether it is or not, that rule has no effect here. The estate granted to Mrs. Hilbus was equitable, that to the remaindermen legal. In such a situation, the two estates do not coalesce under the rule in *Shelley's Case*. In order that such a result may happen, the particular estate and the estate in remainder must be of the same quality; for it is elementary that this rule "does not apply where one of the estates sought to be carved out is equitable and the other is legal." *Slater* v. *Rudderforth,* 25 App. D. C. 504; also *Green* v. *Green,* 23 Wall. 490, 23 L. ed. 77; *Sims* v. *Georgetown College,* 1 App. D. C. 72, 80. Anyhow the rule is not in harmony with the spirit of our institutions, and should not be executed except where it is clearly applicable. *Daniel* v. *Whartenby,* 17 Wall. 639, 647, 21 L. ed. 661, 665. But where it is, the courts will of course enforce it. In this case it has no place.

The judgment in favor of the appellees should be affirmed if it were not for the fact that it gives to them the entire interest in the property, whereas they are entitled to only two thirds of it. This no doubt is an inadvertence, for they asked for only what we find them to be entitled to. Nevertheless, it requires a reversal of the case at the cost of the appellees, but with direction to enter a judgment in their favor for an undivided two-thirds interest in fee as tenants in common in the property described by the declaration, and such is the order of the court.

*Reversed and remanded, with instructions.*

A motion to modify the judgment was denied May 18, 1918.