# Ringe *versus* Kellner.

A testator died seised of certain real estate, leaving a wife, one son and three married daughters. By his will he provided, inter alia, as follows : "All my real and personal estate, after the decease of my wife and after debts and funeral expenses are paid, shall be equally divided among my four children, or their children in case they themselves are dead. It is also my will that my daughters shall have and hold their share of inheritance in their own name, and shall not let it be controuled by their respective husbands, and the husband shall not inherit it unless there is no child living. I want the estate to be settled up within one year after

[Ringe *v.* Kellner.]

the last of us is dead, but will leave to my heirs to determine whether they will sell the real estate within that time or settle it among themselves another way, as, for instance, one may take one property and another one another and pay over the difference." *Held,* that it was clearly the testator's intention to vest a fee in his daughters as to their shares of the real estate after his wife's death, and not to leave the same in trust for their sole and separate use.

January 25th 1882.　Before SHARSWOOD, C.J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county :* Of January Term 1882, No. 201.

Amicable action, case, between Herman D. Kellner, et al., plaintiffs, and Herman Ringe, defendant, for the purpose of determining whether the plaintiffs were seised in fee of certain premises in the city of Philadelphia.

The following facts were agreed upon by the parties, and submitted to the court for their opinion as a case stated :—

Daniel Kellner died on January 28th 1878, leaving to survive him a widow, Caroline M. Kellner, who has since died, on July 14th 1880, and the following children : Herman D. Kellner, Clara J., wife of Frederick C. H. Corvey, Caroline M., wife of Charles F. Albert, and Anita M., wife of Gustav K. Schindler.

By his will, since duly admitted to probate in the office of the register of wills of Philadelphia county, Daniel Kellner provided, as follows :—

"PHILADELPHIA, July 26th 1876.

" I, Daniel Kellner, now residing No. 515 Wood street, in the city of Philadelphia and state of Pennsylvania, I herewith make and write down my will and testament which if no will of a later date be found at my decease shall be binding to my heirs and all concerned as my last will and testament.

" To my beloved wife, Caroline Kellner, I leave all the revenue and income of my real and personal estate during her life time provided she remains my widdow . . . . all my real and personal estate after the decease of my wife and after debts and funeral expenses are paid shal be equally divided among my four children or their children in case they themselves are dead.　It is also my will that my daughters shal have and hold their share of inheritance in their own name and shal not let it be controuled by their respective husbands, and the husband shal not inherit it unless there is no child living.　I want the estate to be settled up within one year after the last of us is dead, but will leave to my heirs to determine whether they will sell the real estate within that time or settle it among themselves another way, as for instance, one may take one property

[*Ringe v. Kellner.*]

and another one another and pay over the difference. Now, to avoid all quarreling as much as possible after we are gone, I will say yet, Whatever we have given to one or the other during lifetime shal not be taken account of. But if any one holds borrowed money for which he or she pays interest such sums must be taken in account. All furniture and other personal estate what is left shal be collected in as many lots as there are children heirs and drawn for by lot.

" DANIEL KELLNER."

At the time of his death Daniel Kellner was seised in fee of premises No. 515 Wood street, in the city of Philadelphia. Herman Ringe has entered into a contract to purchase from the heirs of Daniel Kellner, deceased, hereinbefore named, the said premises for the price of $3,100, but now refuses to pay the purchase-money, upon the ground that the said heirs cannot convey to him an estate in fee.

If the court shall be of opinion that the said plaintiffs can convey to the said Ringe an estate in fee, then judgment shall be entered in favor of the plaintiffs against the said defendant for the sum of $3,100; but if the said plaintiffs cannot convey such an estate, then judgment shall be entered in favor of the defendant; either party to be at liberty to sue out a writ of error.

After argument, the court below, being of the opinion that the plaintiffs could convey to Ringe an estate in fee, entered judgment against the defendant in the sum of $3,100. The defendant then took this writ of error, assigning for error the said judgment.

*Richard C. Dale*, for the plaintiff in error.—Prior to the Act of April 11th 1848, the use of any words in a deed or will which indicated an intention to give property to a married woman in such a manner as that she should hold independent of her husband's control, was sufficient to raise a trust for her sole and separate use. If no trustee were named, a court of equity would not permit the trust to fail for that reason, but would appoint a trustee: Jamison *v.* Brady, 6 S. & R. 465; Tyson's Appeal, 10 Barr 220; Heck *v.* Clippenger, 5 Barr 385. The Act of 1848, has no application to cases where the words would have created, before that act, a sole and separate estate in equity: Wright *v.* Brown, 8 Wright 224. A married woman, for whose benefit a sole and separate estate in equity has been created, has no power of alienation other than what may be expressly given to her in the instrument creating the trust.

The direction of the testator, that the shares of his daughters (who were married women at the date of the will) should

[Ringe v. Kellner.]

not " be controlled by their respective husbands, and the husband shall not inherit it, unless there is no child living," is appropriate to create a sole and separate estate ; and there being no express general power of sale given to the cestuis que trustent by the will, they cannot convey a fee.

*Mayer Sulzberger*, for the defendants in error.—The estate given by the will answers the description of the estate given by the Act of 1848. Not only was no trust created, but the idea of a trust is excluded by the express direction that the daughters were to have and to hold their shares in their own names; they had the option of selling or making partition among themselves. The testator's expressions " they shall not let it be controlled by their husbands," and " the husband shall not inherit it unless there is no child living" may fairly be construed to be merely words of recommendation and advice. Otherwise the provisions of the will would be inconsistent and irreconcilable, in which case the prior clause excluding the husband's control must give way to the subsequent power to sell. In doubtful cases, the law leans in favor of absolute estates.

Mr. Justice GREEN delivered the opinion of the court, February 20th 1882.

In this case the operative words of the actual devise are as follows : " All my real and personal estate after the decease of my wife and after debts and funeral expenses are paid, shal be equally divided among my four children or their children in case they themselves are dead." It is undoubted, and it is not at all questioned, that these words alone, and standing by themselves, passed the fee simple of all the testator's real estate to the devisees named. But it is argued that certain additional words next occurring in the will, reduce this estate, so far as the daughters of the testator are concerned, to a mere use, and that they must therefore be held to be vested only with an estate to their sole and separate use, without power of alienation. The words relied upon for this construction are the following : " It is also my will that my daughters shal have and hold their share of inheritance in their own name and shall not let it be controuled by their respective husbands, and the husbands shall not inherit it unless there is no child living." It will be observed that no use estate is given in words and no trust of any kind is created.

Indeed, it is directed expressly that the property shall be held by the daughters in their own names, which excludes the idea of a trust. The direction that the husbands shall not control the estate, is simply an expression of the legal state of the title under the Act of 1848, and the result would be precisely the same if these words were not in the will. It would be strain-

ing the meaning of the last words of the clause very greatly indeed, to hold that they created the technical estate known as an estate for the sole and separate use of a married woman, with its peculiar and undesirable incidents. The words are "and the husband shall not inherit it unless there is no child living." Strictly speaking, these words impose no limitation upon the husband's interest as it would be either at common law, or under the Act of 1848. They only deny inheritance to the husband, except in the event of a failure of issue. They do not interfere with his tenancy by the curtesy in the event of issue, and they leave him free to take all that he could possibly take if no children are born and survive.

We are clear, therefore, that the words of the clause of the will above quoted, and upon which alone the contention of the defendant is based, can not operate to create an estate for the use of the daughters only, but were we in doubt on that subject, the next succeeding clause would certainly remove the doubt. It is in these words : " I want the estate to be settled up within one year after the last of us is dead, but will leave to my heirs to determine whether they will sell the real estate within that time or settle it among themselves another way, as for instance, one may take one property, and another one, another and pay over the difference." Here is a clear implication, indeed an expression, of a power to sell, or if the devisees prefer, to make partition of the property among themselves and provide for owelty. Either of these powers is entirely inconsistent with the estate for sole and separate use claimed by the defendant. The very object of the defence in this case is to obtain a judicial declaration that there is no power of alienation in the daughters under this will, and yet such a construction would clearly contravene both the implied and the expressed intent of the testator that the daughters should possess that power. The case of Jamison *v.* Brady, 6 S. & R. 465, is not applicable, as there the gift was expressly to Martha Brady for her own use, and the decision was based upon those words in the will. In Wright *v.* Brown, 8 Wright 224, also, the devise was for the sole and separate use of the testator's nieces, and there was no question as to the character of the estate thus created. The controversy was on the power of alienation in view of the Act of 1848, and it was held that the Act did not affect this class of estates. We are of opinion that the construction of the will of Daniel Kellner by the learned court below was right, and therefore

The judgment is affirmed.