## MacConnell, Appellant, v. Wright.

[Marked to be reported.]

*Will—Separate use—Intention—Surrounding circumstances.*

The creation of a separate use is always a question of intention to be gathered from the will, the surrounding circumstances, and the condition of the estate and family.

*Burden of proof to establish separate use.*

The burden of proof is upon those claiming the creation of a separate use to show it by language clearly indicating such intent.

*Provisions of will and surrounding circumstances.*

Testatrix by her will gave to her adopted daughter the bulk of her personal property, valued at about $70,000, and "all the rest and residue of my estate, real, personal and mixed, absolutely and in fee," and including therein possible lapsed legacies, "free from the control of her present or future husband, and without liability for his debts, but wholly for her own use and benefit and subject to her own control." She also devised to her daughter a mansion house property containing about ten acres, with the "request that she shall retain and occupy the same as a homestead for herself and family as long as she possibly can, and I direct that the homestead shall not be sold or in any manner made liable for the payment of my debts, legacies," etc. This homestead she afterwards conveyed to her daughter in fee, whom she made executrix with power of sale of realty, except the homestead, for payment of debts and legacies. The residuary estate consisted of some forty-two acres of unimproved city lots, which testatrix had laid out and placed on the market. Streets were being opened and municipal improvements made at the time of her death. Her personal estate was appraised at about $86,000, her real estate at $207,000. Her legacies and debts, including municipal improvements and collateral inheritance tax, amounted to about $75,000. The income from the real estate was less than $1,800, the tax over $3,000.

*Held,* that, from the will and the surrounding circumstances, the intent to create a separate use trust did not appear, and the estate granted was a fee.

While the provision as to use and control, standing alone, might create a separate use trust, when it is preceded by a devise of the estate "absolutely and in fee simple," and by a further clause giving an absolute power of sale, with the provision that the purchasers shall not be bound to look to the application of the purchase money, the intention of the testatrix to create a separate use may be more than doubted: Per PAXSON, C. J.

MacConnell v. Lindsay, 131 Pa. 476, qualified.

Argued Feb. 18, 1892.   Appeal, No. 296, Oct. T., 1891, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Oct.

T., 1891, No. 191, for defendant on case-stated, to determine whether a devise was of a fee or a separate use trust. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and HEYDRICK, JJ.

The case-stated agreed upon the following facts: Eveline Gross of Pittsburgh, Pa., died testate Aug. 15, 1888. At the time of her death she owned a personal estate appraised at $86,807.62, and a tract of unimproved land in fee, in the twentieth ward, consisting of twenty-six pieces, as a whole, including streets and alleys, aggregating forty-two acres. The city and county taxes on the realty ranged from $1,373.63 to $2,656.48, during six years prior to her death. The whole of this realty was laid out into lots by two plans, the first adopted Sept. 1, 1876, and recorded in August, 1881, the other adopted and recorded Feb. 12, 1887. Of these lots, Mrs. Gross sold in her lifetime about fifty-three. The income from this property, exclusive of sales, for any one of the five years preceding her death did not exceed $1,800.

The will is dated Feb. 23, 1886. By it she devised to plaintiff, her adopted daughter, the homestead, in the Twentieth Ward, containing ten acres and the homestead buildings. On Oct. 29, 1887, she conveyed said homestead to appellant in fee, who took possession. The will further gave $39,100 in pecuniary legacies, to various legatees, and to plaintiff all the personal property, to wit, notes, bonds, mortgages, stocks (except $15,000 worth of shares in the Pittsburgh National Bank of Commerce, which was to be appropriated as an investment for certain of the pecuniary legatees), moneys, plate, jewelry, diamonds, pictures, household furniture and all other personal effects. The other provisions of the will are recited in the opinion of the Supreme Court.

Plaintiff was married prior to the date of the will and her husband is still living and the marital relations still exist.

The city valuation of the unimproved lands for purposes of taxation varied from $65,973 in 1882, to $184,690 in 1886, and $133,169 in 1888. Since testatrix's death, plaintiff has sold a number of lots at a valuation slightly exceeding $19,000 per acre. The income from said property since testatrix's death at no time exceeded $1,800, while the taxes have been over $3,000.

Prior to testatrix's death Winebiddle avenue, Conrad street (now Pacific avenue), Herman street (now Atlantic avenue) had been opened, Winebiddle and Conrad graded, and at the time of her death Winebiddle was being sewered, curbed and paved, and the Thirty-third street sewer had been located and was being constructed. Harriet street was opened subsequent to her death (all of them having been adopted by her in her plans of lots), and the following claims for said municipal improvements were made against said realty : Winebiddle avenue, opening, grading, paving and sewer, $9,280.17 ; Conrad street, opening, grading and sewer, $958.04 ; Harriet street, opening, $927.60 ; Thirty-third street sewer, $10,054.46. Since testatrix's death municipal claims have been made for other improvements, amounting to $3,780.33. The collateral inheritance tax on this realty was $10,384, less rebates, the appraised value being $207,000. The indebtedness of testatrix, besides municipal claims, did not exceed $2,000.

Plaintiff sold one of the lots devised to her to defendant who gave a mortgage for $4,434.50 to secure the unpaid purchase money. This mortgage is now due with interest at six per cent from April 27, 1889. If plaintiff took a fee, judgment to be entered for plaintiff ; otherwise, for defendant.

The court, WHITE, J., entered judgment for defendant for costs, following MacConnell v. Lindsay, 131 Pa. 476. Plaintiff thereupon appealed.

*Error assigned* was such entry of judgment.

*D. T. Watson*, for appellant.—Parol evidence is admissible to show the surrounding circumstances, such as location, condition and value of property devised, the uses to which it had been put and the expenses incurred in the ownership and possession, and any other facts to put the court in the place of the parties : Greenl. Ev., § 287 ; Wigram's 5th rule ; Postlethwaite's Ap., 68 Pa. 480 ; Webb v. Hitchins, 105 Pa. 95 ; Barnhardt v. Riddle, 29 Pa. 97 ; Aldridge v. Eshleman, 46 Pa. 420 ; Jacobs' Est., 140 Pa. 268. For illustration as to expense of operating property, see Sparks's Ap., 89 Pa. 152.

The question is one of intention, but the burden is on those asserting a separate use trust. The intent must be clear : MacConnell v. Lindsay, 131 Pa. 476 ; Morrison v. Dollar Sav-

ings Bank, 36 Leg. Int. 215; Rank v. Rank, 120 Pa. 195. Beyond the reach of reasonable controversy: Schouler, Dom. Rel., 189, 2d ed.; 2 Perry, Tr., § 647; Hill, Trustees, 611. The incidents of such an estate are peculiar and undesirable: Ringe v. Kellner, 99 Pa. 464.

If the intent is not clear the courts will declare against it, although there are clauses showing a desire to exclude the husband from certain marital rights: Rank v. Rank, 120 Pa. 195; Ringe v. Kellner, 99 Pa. 463; Morrison v. Dollar Savings Bank, 36 Leg. Int. 215; Christman v. Wagner, 9 Pa. 473. Todd's Ap., 24 Pa. 431, holds it an equitable estate. And it must be distinctly and unequivocally expressed: Morrison v. Dollar Savings Bank, 36 Leg. Int. 215.

Plaintiff was testatrix' chief object of bounty, yet if the personal property bequeathed to her were applied to pay debts and general legacies there would be little left. The only other property was the unimproved land, the tax on which considerably exceeded the entire revenue, and it would be a burden instead of a benefit.

If the will gave a separate use in this land she took only such powers over it as the will plainly and expressly gave: Thomas v. Folwell, 2 Wh. 11. That would be, under this will, (1) wholly for her own use and benefit, and (2) subject to her control. As the construction is strict, and a power to sell, lease or improve must be plainly conferred (see authorities cited in Lindsay v. MacConnell, 131 Pa. 476, and Lancaster v. Dolan, 1 Rawle, 231), it would seem the only use would be cultivation. And yet this tract was worth $500,000 when testatrix died, and she had laid it off into lots, and recorded the plans. Could she have intended that the property should remain *in statu quo*, and at appellant's death go to heirs who might then be merely collaterals?

But the words of the will do not favor such a construction. The residue, including real estate and possible lapsed legacies, is given "absolutely and in fee simple." This gives the legal title and the right of sale. The succeeding words, relied upon by appellee, do not show a clear intent to create an equitable estate. The property shall be free from the control or debts of her husband, subject to her own control and wholly for her use. What marital rights do they bar? If she took a fee, her hus-

band could neither control it nor render it liable for his debts. If it is a separate use, a trustee may be appointed. How could she then have it under her control? While testatrix must be presumed to know the law, we must also assume that she knew a mere declaration of her desire as to the husband would not change a legal into an equitable estate. If her intent were clear this argument would not prevail. But where it is not, the court will consider that an expression of desire which would be fully met by giving the natural effect to her words creating a legal estate will not be used to force an intent to create an equitable estate. If the legal estate can stand, with the subsequently expressed desire of exclusion of even supposed marital rights, there is no good reason why the court should use that expression of desire as showing a clear intent to change the nature of the estate granted. Especially is this so when the practical result would be to make the apparent benefit a real burden.

The devise as to the homestead does not show that testatrix intended to create a different kind of estate by the residuary clause: (1) Because she did not own the homestead at her death, and the will speaks as of the time of her death: Act June 4, 1879, § 1, P. L. 88. (2) The clause shows a desire that the homestead should be kept as a home, unencumbered. This strengthens our construction. She could not keep it if she was to have only the income from the unimproved land, which was not enough to pay the taxes.

The intent to create a separate use is not only not clear but a contrary intent clearly appears.

In Jamison v. Brady, 6 S. & R. 465; Craig v. Watt, 8 Watts, 498; and Snyder v. Snyder, 10 Pa. 423, the technical words " sole or separate use " were used, or the court was satisfied of the intent from the general scope of the will.

MacConnell v. Lindsay, 131 Pa. 476, cannot be pleaded in bar because it is not between the same parties, does not involve the same property, and is not for the same cause of action, and was not decided on the merits: Hampton v. Broom, 1 Miles, 241; Tams v. Lewis, 42 Pa. 410; Carmony v. Hoober, 5 Pa. 305.

*J. A. Evans* and *J. J. Miller*, for appellee.—Testatrix divided her realty into two parts. The homestead she gave without

restriction. She knew the laws protected it from the husband's debts. She had the same knowledge when she devised the other part.. What other intention could she have than to create a separate use? The power to sell or mortgage as executor to pay debts was not necessary if appellant could sell as devisee. This provision for payment of debts, etc., shows she had the circumstances of her estate in view. It provided for payment by sale of realty, without touching the bequests to plaintiff, amounting to $70,000, or the homestead valued at $200,000. Plaintiff was asked to hold the homestead "as long as she possibly could," but there was no limitation upon its use. Properly handled, her estate would produce $15,000 income. With this in mind, testatrix made the residuary clause. If she meant a fee she would have stopped with the first sentence. Had she stopped with the provision as to the husband's debts, a fee might have remained, it being conceded that a wife's separate property is free from her husband's debts. But to make her intention certain she added the clause as to separate use and control. A fee may be cut down to a life estate by subsequent words in a will: Urich v. Merkel, 2 W. N. 550; Middleswarth v. Blackmore, 74 Pa. 414. Testatrix gave her personalty absolutely, and the mansion in fee; if she meant a fee in the residue why did she make a separate bequest, and limit it ꞗ wholly to her own use and benefit?"

Under the Price Act of April 18, 1853, P. L. 503, the separate use realty could be sold or leased and the income invested for plaintiff's "use and benefit."

No trustee can be appointed unless the devisee consents. His appointment is subject to her control. She can limit his powers as to sale, etc., by the instrument creating him. He and the estate are "wholly subject to her control."

The case raises the broad question whether or not separate uses are longer to continue in Pa. It is enough to cite MacConnell v. Lindsay, 131 Pa. 479, on that point. The same question was then before the court, with the addition now of the quantity and condition of testatrix's estate, which but aid in affirming that judgment.

No particular words are necessary to create a separate use : Jamison v. Brady, 6 S. & R. 465 ; Snyder v. Snyder, 10 Pa. 423. The words " sole and separate " qualify the kind of use :

Wright v. Brown, 44 Pa. 224. " Wholly " is an equivalent expression.

Ringe v. Kellner, Morrison v. Bank, Rank v. Rank and Christman v. Wagner, were limited to provisions as to the husband's debts. They contain no provision as to sole or separate use, as in our case.

No right of the husband was barred by this will for he had none except curtesy, which is not affected by the separate use : MacConnell v. Lindsay, 131 Pa. 476; Wright v. Brown, 44 Pa. 224; Van Rensselaer v. Dunkin, 24 Pa. 252; Dubs v. Dubs, 31 Pa. 149; Rank v. Rank, 120 Pa. 191.

There is no reason why a lapsed legacy may not be made a part of a separate use trust estate.

Testatrix undoubtedly meant that this estate should descend in fee to appellant's heirs. She is presumed to know that, if the realty was sold through a trustee, the purchaser would acquire a fee : Dubs v. Dubs, 31 Pa. 155 : Wright v. Brown, 44 Pa. 224.

This case is a hardship to appellant, but to reverse this judgment will be to abandon the decision of a century.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

The contention in this case arises upon the following clause of the will of Eveline Gross, deceased:

" I hereby bequeath and devise to my said adopted daughter, Mathilda Gross MacConnell, all the rest and residue of my estate, real, personal and mixed, absolutely and in fee simple, and including therein any and all legacies which may lapse by reason of the decease of any beneficiary or otherwise. And it is my will that said Mathilda Gross MacConnell shall take and hold the property hereby given to her, free from the control of her present or future husband, and without any liability for any debts, liabilities or engagements of such husband, but wholly for her own use and benefit, and subject to her own control."

The question we are now called upon to determine is, whether, under the will of Eveline Gross, a separate use is created as to the property devised by the residuary clause above cited.

We feel somewhat embarrassed by the fact that, in MacCon-

neil v. Lindsay, 131 Pa. 476, this very question was before us, arising upon the same will, and we there held that the paragraph above quoted did create a separate use. It is proper to say, however, that the question pressed upon us at that time was the effect of the Act of 1848, and the Married Person's Property Act of June 3, 1887, upon separate use trusts. The intention of the testatrix, as gathered from the whole will, and from the circumstances surrounding her and her estate, was entirely overlooked or ignored in that case. This sufficiently appears from the report of it in 131 Pa., and especially from the very able and elaborate opinion of our late brother Clark, in which he shows in a very conclusive manner that it was not intended by the Acts of Assembly referred to to abolish separate use trusts. Seven pages of that opinion were devoted to this subject, while only a part of a page referred to Mrs. Gross's will. It may be conceded that the words " And it is my will that the said Mathilda Gross MacConnell shall take and hold the property hereby given to her free from the control of her present or future husband, and without any liability for any debts, liabilities or engagements of such husband, but wholly for her own use and benefit, and subject to her own control," if standing alone, are sufficient to create a separate use. This is really all that was decided in MacConnell v. Lindsay.

The question now comes up in a suit between different parties ; and, with the facts agreed upon in the case-stated, as now presented, it differs radically from MacConnell v. Lindsay. It is our duty to declare the law as required by the changed circumstances, even though it should subject us to criticism on the part of those who do not look beneath the surface.

Eveline Gross, the testatrix, was the childless widow of the late Dr. A. H. Gross, of the city of Pittsburgh. Mathilda Gross MacConnell was her adopted daughter, and the principal object of her bounty. By the second paragraph of her will she gave to her said adopted daughter all her personal property, consisting of notes, bonds, mortgages, stocks (except certain bank stock), moneys, plate, jewelry, diamonds, pictures, household furniture, and all other personal estate whatsoever. Then follows a number of legacies and gifts to collateral relatives and others, including some charitable bequests. By the sixth paragraph of her will, she devised the homestead property, of which she

was entitled, containing about ten acres, to her said adopted daughter, and concludes the devise with these words: "And it is my desire and earnest request that she shall retain and occupy the same as a homestead for herself and family, as long as she possibly can, and I direct that the said homestead shall not be sold, or in any manner made liable for the payment of my debts, or for the payment or discharge of any legacy or other liability, created by this will."

After expressing this earnest desire, that the homestead should be retained as a residence by her adopted daughter, she proceeds to give the latter a power of sale in the following words: " I hereby authorize and empower my executrix (the appellant) to sell, mortgage, or otherwise convey and dispose of any real estate of which I may die seized (except the aforesaid homestead property) for the payment of debts or legacies, and the due administration and settlement of my estate, and purchasers from her shall not be liable for or bound to look to the application of the purchase money which they may pay to her upon such purchase or mortgages."

Then follows the residuary clause before mentioned, after which the testatrix appoints the said Mathilda Gross MacConnell executrix of her will.

The testatrix must be presumed to have understood the extent and value of her estate at the time she made her will. The nature and character of said estate, as it existed at the time of her death, fully appears in the case-stated. From that we learn that she left personal estate, consisting of money, mortgages, notes, and bank stock, amounting in the aggregate as per appraisement to $86,807.62. She also left unimproved real estate in the Twentieth ward of the city of Pittsburgh, consisting of twenty-six different tracts, which, prior to the death of the testatrix, she had laid out into lots. This property is extremely valuable, but yields little income. For the six years prior to the death of Mrs. Gross, the city and county taxes on this property averaged nearly $2,000 per year. Since her death, the taxes have been increased, amounting in 1891 to $3,435.01, while the income derived therefrom has at no time exceeded $1,800 per annum. In addition, claims for municipal improvements to a large amount have been filed against the property. The collateral inheritance tax due upon it at Mrs.

Gross's death amounted to $10,384, which was subsequently paid. The practical result is, that the personal estate bequeathed to Mrs. MacConnell has been entirely exhausted in the payment of the general legacies, collateral inheritance tax, debts, and the expenses of the administration, leaving Mrs. MacConnell with a large and expensive homestead to keep up, not only without any income to do so, but with large annual charges for taxes, etc., against unimproved property, in addition to municipal assessments.

Assuming, as we have a right to do, that Mrs. Gross was thoroughly cognizant of the condition of her estate when she made her will, the inquiry suggests itself, whether it is probable she intended to embarrass the estate by creating a separate use. It will be observed, that in the seventh paragraph of the will, the clause which it is claimed creates the separate use, is preceded by a devise of the estate to her adopted daughter, "absolutely and in fee simple." This language is certainly very emphatic, and when we consider that the sixth section preceding, contains a broad and absolute power of sale, with the provision that the purchasers shall not be bound to look to the application of the purchase money, the intention of the testatrix to create a separate use, may be more than doubted.

It is settled by abundant authority that the circumstances surrounding a testator at the time he makes his will may be considered in construing it: Postlethwaite's Appeal, 68 Pa. 477; Bernhardt v. Riddell, 29 Pa. 97; Aldridge v. Eshleman, 46 Pa. 420; Sparks' Appeal, 89 Id. 152; Webb v. Hitchins, 105 Id. 95; Jacobs' Estate, 140 Id. 268.

A separate use always means an equitable estate, as distinguished from a legal estate: Todd's Appeal, 24 Pa. 431. In Ringe v. Kellner, 99 Pa. 460, it was said that the incidents of such an estate are "peculiar and undesirable." Be that as it may, the creation of a separate use is always a question of intention to be gathered from the four corners of the will, as well as from the circumstances surrounding the testator at the time he made it, and from the condition of the estate and his family. The question, whether the testator has created a separate use trust estate, or a legal estate in fee simple, is always one of intention, but the burden is upon those claiming he intended to create a separate use trust estate, to show this by

language clearly indicating such intent: Morrison v. Dollar Savings Bank, 36 Legal Intelligencer, 215; Rank v. Rank, 120 Pa. 195.

From the broader light thrown upon this question by its re-argument. and from the facts as embodied in the case-stated, we are now constrained to hold that Eveline Gross, the testatrix, did not intend to create a separate use as to the property devised to Mathilda Gross MacConnell.

The judgment is reversed, and judgment is now entered for the plaintiff in the case-stated in the sum of four thousand, four hundred and thirty-four and fifty one-hundredths dollars, with interest.

MR. JUSTICE STERRETT dissents.